IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SCOTT A. BROWN,

                    Plaintiff,

        v.

MICHAEL DITTMANN,                                    OPINION & ORDER
UNIT MANAGER WALKER,
UNIT MANAGER FINK,                                    17-cv-278-jdp
DICKSON BAURES,
C.O. GOODWIN, Sgt. Willet, and
LT. SUPERVISOR PERENTEAU,

                    Defendants.

---

Pro se plaintiff Scott A. Brown, a Wisconsin prisoner incarcerated at the Columbia Correctional Institution (CCI), asserts Eighth Amendment claims against various CCI employees. Brown contends that defendants failed to respond adequately to his threats of suicide and that they are not taking Brown's mental illnesses seriously.

Brown has made an initial partial payment of the filing fee under 28 U.S.C. § 1915(b)(1). The next step is for me to screen his complaint and dismiss any portion that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for monetary damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. §§ 1915 and 1915A. I must read Brown's pro se complaint generously. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972) (per curiam). With these principles in mind, I conclude that Brown fails to state a claim. I will dismiss the case, and Brown will incur a strike under 28 U.S.C. § 1915(g).

Brown also filed a motion for a preliminary injunction. Dkt. 3. I will deny the motion.

ALLEGATIONS OF FACT

I draw the following facts from Brown's complaint, Dkt. 1, which I accept as true.

A. **Correspondence with Baures**

On September 26, 2016, Brown submitted a request form to see defendant Dickson Baures, a psychologist at CCI, because Brown had suicidal thoughts. The next day, Baures met with Brown. Two days later, on September 29, Baures responded to Brown's request form, stating that Baures met and discussed the concerns on September 27 and that they developed a plan for treating Brown's behavior.

On October 3, Brown submitted multiple request forms to see Baures. (It is unclear how many forms he submitted.) Brown indicated in one form that he had "been very depressed having thoughts and dreams, sweating in my sleep." *Id*. ¶¶ 16, 20. He wrote in another form that "this is making me very depressed knowing I have to go through this." *Id*. ¶ 18. The next day, Baures sent Brown a letter stating, "you are on my list." *Id*. ¶ 19. Two days later, on October 6, Baures met with Brown again and discussed Brown's concerns.

On October 17, Brown submitted two request forms. He wrote in one form that he had "been depressed lately and it's been very hard on me to sleep because of the dreams." *Id*. ¶ 22. He wrote in the other form that he wished to know the exact diagnosis of his mental condition. *Id*. ¶ 23. The next day, Baures responded by saying, "Please see Memo dated 10-18-16 . . . We will discuss this in our next Appointment." *Id*. ¶ 24. Brown does not explain what Baures wrote in the memorandum.

On October 24, Brown submitted yet another request form, telling Baures he had "been depressed trying to do other things like read, write, listening to my radio, and working out" and that he had suicidal thoughts and dreams. *Id*. ¶ 25. Three days later, on October 27, Baures

responded by saying "I will see you as soon as I can. Please inform staff if there is an emergency." *Id*. ¶ 26.

**B.  October 27, 2016 incident**

On October 27, the same day he received a response from Baures, Brown told an unnamed correctional officer that he needed to speak to Baures because he had suicidal thoughts. The correctional officer let Brown out of his cell and escorted him to see Baures, who interviewed Brown and discussed his concerns. Brown told Baures that he needed to be on observation status because of the thoughts he had. Baures did not place Brown on observation status and instead told a correctional officer that Baures did not want Brown to cut himself and wanted Brown to stay out of his cell and help clean up the dayroom. Baures also told Brown to "try and use [Brown's] coping skills." *Id*. ¶ 29.

On the same day, Brown told defendant Sgt. Willett that he needed to see Baures again and that Baures had instructed Brown to inform a staff member in case of an emergency. Willett responded by saying that Brown had already seen Baures that day and that "Baures told them that she [had] seen [Brown] and she only see[s] [Brown] once a week and that [Brown] knew that." *Id*. ¶ 31. Willett also added that Baures was probably on her way home at the time because the Psychological Services Unit (PSU) staff at CCI usually leave the prison at 4:30 p.m. and that Baures would be back the next day. Brown asked Willett what he was supposed to do and indicated that his suicidal thoughts were getting worse. Willett responded, "[Y]eah, I know the games you play Brown, I know." *Id*. ¶ 32.

After his conversation with Willet, Brown went to defendant C.O. Goodwin. Brown told her that he tried to tell Willett about his suicidal ideations and that he needed to see a "white shirt" for his safety. *Id*. ¶ 33. Goodwin responded that she would call her supervisor. (It

is unclear whether Goodwin actually called her supervisor, but the supervisor did eventually come to Brown's cell, as discussed below.)

Brown then returned to his cell and began cutting himself, causing himself to bleed. Goodwin's supervisor and other correctional officers arrived to Brown's cell and escorted Brown to the Health Services Unit (HSU). While escorting Brown, Goodwin's supervisor instructed Willett "not to mess with" Brown's cell because he needed to take pictures of the blood on the floor. *Id*. ¶ 34. But Willett cleaned Brown's blood anyway. Brown was placed on observation status.

## C. December 26, 2016 incident

On December 26, Brown told defendant Lt. Supervisor Perenteau that Brown needed to have his bandage changed and that he had urges to reopen his cut. Perenteau responded by stating that he would contact the HSU. After Perenteau walked away, Brown began reopening his wound by cutting himself again. Brown was escorted to the HSU and received medical treatment there. Perenteau later placed Brown on control status and gave Brown a "ticket." *Id*. ¶ 38. Brown was placed in a segregation unit for a few days, released, and then placed in a segregation unit again for 30 days. According to Brown, his placement in segregation was a punishment for harming himself.

ANALYSIS

## A. Proposed complaint

### 1. Deliberate indifference claims

Brown purports to assert deliberate indifference claims against all defendants. But Brown has not alleged facts that would establish that any defendant was deliberately indifferent

to his tendency to engage in self-harm. To the contrary, his own allegations show that defendants attended appropriately to his needs.

A deliberate indifference claim under the Eighth Amendment "has both an objective and a subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). As for the first element, acts of self-harm can show that the prisoner suffers from an objectively serious medical condition. *Id.*; *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 665 (7th Cir. 2012) ("[P]rison officials have an obligation to intervene when they know a prisoner suffers from self-destructive tendencies.").

As for the second element, the plaintiff must demonstrate that the defendant acted with deliberate indifference. In the context of a prisoner's self-harm or threats of self-harm, deliberate indifference means that the prison staff: (1) subjectively knew that the prisoner was at a substantial risk of harming himself; and (2) intentionally disregarded that risk. *Cf. Collins*, 462 F.3d at 761 (discussing deliberate indifference in the context of suicide or attempted suicide). An allegation that the defendant "should have been aware" is not enough; the defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Novack ex rel. Turbin v. County of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Here, Brown does not allege facts that would establish the second element against any defendant. As for Baures, Brown's complaint indicates that she continually saw and treated him for his mental illnesses. Baures saw Brown on a weekly basis, and every time Brown

requested to see her, she promptly responded to his request. Such constant, regular medical care is the "antithesis of deliberate indifference." *Harper v. Santos*, 847 F.3d 923, 927 (7th Cir. 2017) (quoting *McGee v. Adams*, 721 F.3d 474, 482 (7th Cir. 2013)).

Perhaps Brown's theory is that Baures should have given Brown immediate attention every time he asked to see her, but Brown cannot prevail on that theory. Once Baures determined that she could adequately treat Brown's condition by meeting with him on a weekly basis, that determination is entitled to deference; as a prisoner, Brown cannot dictate the terms of his care. *See id.* at 928 ("Harper is not entitled to dictate whether Nurse Dean should have treated him differently or immediately transferred him to St. Mary's."); *Bowers v. Pollard*, 602 F. Supp. 2d 977, 993 (E.D. Wis.) *aff'd*, 345 F. App'x 191 (7th Cir. 2009). Brown was not entitled to receive immediate psychiatric attention every time he demanded it.

Brown similarly fails to state a claim against Goodwin, who told Brown that she would inform her supervisor of his need for care. Brown does not indicate whether Goodwin failed to inform her supervisor, and the supervisor did in fact come to his cell. For the same reason, Brown fails to state a claim against Perenteau, who told him that he would contact the HSU when Brown requested that he needed his bandage changed. Brown does not allege that Perenteau failed to contact the HSU, and the HSU staff did in fact treat Brown for his wound.

Brown likewise fails to state a claim against Willett. Willett was not deliberately indifferent when he told Brown that Baures had gone for the day and that she would be available the next day: Brown was not entitled to an immediate attention, especially because Baures had already seen him that same day. The fact that Willett thought Brown was lying does not show deliberate indifference. *See Townsend v. Cooper*, 759 F.3d 678, 684, 688-90 (7th Cir. 2014) (holding that two psychologists laughing at plaintiff and telling him that he was

"making things up" did not establish deliberate indifference); *Harper*, 847 F.3d at 928 (holding that a prisoner's assertion that a nurse laughed at him does not establish deliberate indifference.). As for the allegation that Willett cleaned up Brown's blood even though he was told not to, I take Brown to mean that Willett tried to make Brown's condition appear less serious. But even this fact does not show deliberate indifference to Brown's medical needs.

Against other defendants—Dittmann, Fink, and Walker—Brown does not allege any personal involvement. To be liable under § 1983, a defendant must have some personal involvement in the constitutional deprivation. *Hildebrandt v. Ill. Dep't. of Nat. Res.*, 347 F.3d 1014, 1036 (7th Cir. 2003). A supervisor may be held liable if "the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent." *Wilson v. Warren County*, 830 F.3d 464, 469 (7th Cir. 2016) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). Alleging that a defendant knew about the problem does not suffice. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("[The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right."). Because Brown does not explain how Dittmann, Fink, and Walker wronged him, Brown does not state a claim against these defendants.

## 2. Punishment for self-harm

Brown alleges that Perenteau punished Brown by placing him in a segregation unit for harming himself.[1] This allegation, too, fails to state a claim.

One colorable argument might be that Brown's due process rights were violated by an arbitrary punishment. The Fourteenth Amendment prohibits "arbitrary state action even within the expected conditions of confinement." *Sandin v. Conner*, 515 U.S. 472, 487 n.11 (1995). To prevail on a due process claim, a plaintiff must show that he was deprived of life, liberty, or property without due process of law. *Townsend v. Cooper*, 759 F.3d 678, 685 (7th Cir. 2014). Here, Brown did not have a liberty interest in being out of segregation.

Generally, "[a] prisoner has no liberty interest in remaining in the general prison population." *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995). And "a prisoner may be transferred for any reason or for no reason at all." *Ford v. Butler*, No. 16-cv-1092, 2016 WL 7337977, at *2 (S.D. Ill. Dec. 19, 2016) (quoting *Williams*, 71 F.3d at 1248). But in limited circumstances, an inmate has a liberty interest in avoiding placement in more restrictive conditions, when those conditions pose "atypical and significant hardship" when compared to "the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In the context of disciplinary segregation, the court looks to "the combined import of the duration of the segregative

---

[1] Facts from another one of Brown's cases suggest that he was not actually punished for harming himself. The parties' submissions in Case No. 16-cv-682 indicate that, on December 26, 2016, the prison officials placed Brown on control status in response to his threats of suicide because they thought it was medically appropriate, not as a punishment. No. 16-cv-682, Dkt. 23, ¶¶ 9-11. Brown was later placed in segregation, but that was a temporary lock-up while Brown awaited a hearing on his pending conduct report for fighting with another inmate. *Id*. ¶ 9. These facts were raised by defendants in response to Brown's motion for a preliminary injunction, and Brown did not dispute them, so they were undisputed. But for purposes of this screening order, I will presume that Brown was punished.

confinement and the conditions endured." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). Absent extreme circumstances, even six months in segregation has been held insufficient to be an atypical and significant hardship. *Id*. at 744.

Here, even if Brown's stay in segregation were a punishment, he still fails to state a claim. Brown's stay in segregation was short: he alleges that he was in segregation once for a few days and then again for 30 days. So Brown could prevail only if the conditions of his segregation confinement were extreme. Brown does not allege how the conditions of confinement during his segregation were extreme or otherwise unlawful. Thus, Brown may not proceed with a due process violation claim.

In sum, Brown fails to state a claim, so the court will dismiss the case. Brown will incur a "strike" under 28 U.S.C. § 1915(g).

## B. Preliminary injunction

Brown also filed a motion for a preliminary injunction. Dkt. 3. Brown seeks an order that enjoins defendants from refusing to put Brown on observation status and that enjoins unit managers from stopping Brown from contacting the PSU. I have already addressed Brown's concerns when I ruled on his preliminary injunction motion in Case No. 16-cv-682. *See Brown v. Miller,* No. 16-cv-682, Dkt. 48 (W.D. Wis. Apr. 19, 2017). While that preliminary injunction motion in that case was pending, Brown filed this motion raising the same issues. The only difference in the current motion is Brown's claim that he is not allowed to contact the PSU. But as I explained in Case No. 16-cv-682, Brown is being monitored by various PSU staff members at CCI. *Id*. at 3-4. Accordingly, a preliminary injunction is not appropriate. And

because Brown fails to state a claim in this case, Brown cannot establish that he has a more than a negligible chance of success. Brown's motion for a preliminary injunction is denied.

ORDER

IT IS ORDERED that:

1. Plaintiff Scott A. Brown is DENIED leave to proceed against defendants.

2. Plaintiff's motion for a preliminary injunction, Dkt. 3, is DENIED.

3. This case is DISMISSED for plaintiff's failure to state a claim.

4. The clerk of court is directed to enter judgment in favor of defendants, close this case, and assess plaintiff a strike under 28 U.S.C. § 1915(g).

Entered August 30, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge